# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

FRANK L. GRAY,                )
     Plaintiff,          )
                            )
    v.                      )     CAUSE NO.: 2:13-CV-143-PRC
                            )
UNITED STATES STEEL CORPORATION,  )
     Defendant.

## OPINION AND ORDER

This matter is before the Court on United States Steel Corporation's Motion for Summary Judgment [DE 36], filed on August 22, 2014. Plaintiff Frank L. Gray worked for Defendant United States Steel Corporation ("U.S. Steel") from 1969 to 2009. In 1995 and 2004, U.S. Steel entered into EEOC Negotiated Settlement Agreements with Gray to resolve charges of employment discrimination he had brought. Between 2003 and 2007, Gray filed grievances through the United Steelworkers Union ("USW") related to seniority violations, improper pay while on temporary machine assignments, improper vacation pay from 2004, and unfair overtime equalization practices; the USW separately filed related grievances on behalf of all affected employees of the Machine Shop where Gray worked. Gray retired on June 1, 2009, without a resolution of those grievances. Then, on November 12, 2011, U.S. Steel issued Gray a $30,000 grievance settlement payment. In February 2012, Gray wrote to the administrator of U.S. Steel's pension fund, requesting that his pension be recalculated to account for the $30,000 settlement; the request was denied.

Gray now brings suit, alleging a breach of the 1995 and 2004 Settlement Agreements by U.S. Steel's failure to properly calculate his pension earnings, timely resolve his grievances, properly consider his seniority and overtime rights in violation of the 2003 and 2008 collective bargaining agreements, grant him a full and fair hearing on his grievances, and allow him to actively participate

in the grievance procedures. Although styled as breach of contract claims, Gray's claims, with the exception of his ERISA claim, would either require an analysis of the collective bargaining agreement under the Labor Management Relations Act and, thus, are barred by the six month statute of limitations or could have been brought during his prior lawsuit in 2009 and, thus, are barred by claim preclusion. Gray fares no better with his ERISA claim as U.S. Steel is not the proper party defendant. As set forth more fully below, summary judgment is granted in favor of U.S. Steel on all claims in Gray's Complaint.

## PROCEDURAL BACKGROUND

On August 17, 2012, Plaintiff Frank L. Gray filed a Charge of Discrimination (No. 470-2012-03075) with the Equal Employment Opportunity Commission ("EEOC") against "US Steel Corp - Gary Works" and "US Steel & Carnegie Pension Fund." Gray charged that Defendant United States Steel Corporation ("U.S. Steel") breached an EEOC negotiated settlement agreement from 1995 by failing to preserve his rights in all terms and conditions of employment, including seniority rights, and that U.S. Steel breached a 2004 settlement agreement by retaliating against him for past EEOC complaints. Specifically, Gray charged that U.S. Steel "grossly delayed" back pay wages owed to him for over 4-1/2 years, almost 2-1/2 years after his retirement, and that the United States Steel and Carnegie Pension Fund ("Carnegie Pension Fund") refused to adjust his average pension earnings to reflect the grievance settlement he was paid in December 2011. Gray charged that the discrimination took place from January 1999 through February 21, 2012, and was continuing. The EEOC issued a Dismissal of Notice of Rights on January 30, 2013, which Gray received on February 4, 2013.

Gray, pro se, filed a Complaint in this case against Defendant U.S. Steel on April 25, 2013, alleging that U.S. Steel breached "previous Title VII Negotiated Settlement Agreements." (Compl. 1). Gray asserts that the Court has jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, and under ERISA, 29 U.S.C. § 1001.

In paragraph 1 of the Statement of Legal Claim in the Complaint ("Count 1"), Gray alleges that U.S. Steel breached the EEOC negotiated settlement agreement of 1995 ("1995 Settlement Agreement") in denying him terms and conditions of employment. He alleges that, after awarding him a $30,000 grievance settlement, U.S. Steel refused to adjust Gray's monthly pension earnings with back pay, in violation of the Pension Agreement between U.S. Steel and the USW regarding "underpayments" and according to ERISA.

In paragraph 2 ("Count 2"), Gray alleges that U.S. Steel breached the 1995 Settlement Agreement concerning "terms and conditions of employment, including seniority rights" by not executing the grievance procedure in a timely fashion. Gray alleges that U.S. Steel refused to give him a full and fair hearing on the grievances for more than eight years and then, in November 2011, without comment or explanation, sent Gray a check for the $30,000 grievance settlement.

In paragraph 3 ("Count 3"), Gray alleges that U.S. Steel breached the 2004 negotiated settlement agreement ("2004 Settlement Agreement") by retaliating against Gray by repeatedly ignoring his seniority and overtime equalization rights, in violation of the 2003 and 2008 Basic Labor Agreements ("BLAs") and by refusing to grant a full and fair hearing to Gray and to allow Gray to actively participate in any of the grievances' second and third step procedures.

Finally, in paragraph 4 ("Count 4"), Gray alleges that U.S. Steel has given Gray "just cause" to charge violations of the 1995 and 2004 Settlement Agreements in that U.S. Steel "implied" that

it may have violated the terms and conditions of the 2003 BLA against Gray when it issued the grievance settlement check in November 2011. Gray alleges that these actions demonstrate a violation of the Settlement Agreements and that equitable tolling should be applied.

On May 23, 2013, U.S. Steel filed an Answer.

On August 22, 2014, U.S. Steel filed the instant Motion for Summary Judgment and served a Notice of Summary Judgment Motion as required by Northern District of Indiana Local Rule 56-1(f). Gray filed a Response, a brief in support, a statement of genuine issues, and exhibits in support. On October 30, 2014, U.S. Steel filed a reply brief as well as a Motion to Strike Gray's response for exceeding the page limit set by Northern District of Indiana Local Rule 7-1. In response, Gray filed a Motion for Leave of Court to Correct Formatting Errors, filing a revised Statement of Genuine Disputes and Material Facts and a revised Response Brief. On November 19, 2014, the Court granted both motions, acknowledging the filing of the revised briefs. Having been granted leave of Court to file a revised reply brief, U.S. Steel notified the Court on November 25, 2014, that U.S. Steel stands on its original reply brief.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill*

*Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**MATERIAL FACTS**

**A. General Background[1]**

Plaintiff Gray began his employment at Defendant U.S. Steel at its Gary Works plant in January 1969 and retired on June 1, 2009. Gray was a member of the United Steelworkers Union ("USW").

The USW and its Local Unions are the exclusive representative of bargaining unit employees working in Production and Maintenance at U.S. Steel's domestic facilities. The terms and conditions of employment for Production and Maintenance employees are governed by a collective bargaining agreement, known as the Basic Labor Agreement ("BLA"), between U.S. Steel and the USW.

Among other things, the BLA contains provisions on discipline and discharges, grievances and arbitration, hours of work, overtime, promotions, seniority, vacancies, wages, incentive rates, and a management rights clause. The management rights clause provides that "[t]he Company retains the exclusive right to manage the business and Plants and to direct the working forces. The Company, in the exercise of its rights, shall observe the provisions of this Agreement." (Def. Br., Ex. D, p. 105). It also provides that "[t]he rights to manage the business and Plants and to direct the working forces include the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work or for other legitimate reasons." *Id*. at p. 106.

Should any differences arise between U.S. Steel and the USW relating to the interpretation, application, or compliance with the BLA or any other agreement, the BLA provides that an

---

[1] Gray presented an extensive Statement of Facts, which the Court has carefully reviewed and verified against the evidence submitted by Gray. Most of Gray's facts are not material because they concern the merits of his many grievances. Thus, only those facts supported by admissible evidence and that are material to the determination before the Court are included.

employee or the Union may file a grievance. The BLA has a detailed procedure governing the handling of grievances. The BLA establishes that the USW is the exclusive representative of the employees and may process grievances through the grievance procedure (including arbitration), or it may adjust or settle any grievance.

### B. Gray's Previous Employment Discrimination Claims/Lawsuits/Agreements Regarding U.S. Steel

*1.     1995 Settlement Agreement*

As the result of an EEOC Charge of Discrimination filed by Gray in 1993, U.S. Steel entered into an EEOC pre-determination negotiated settlement agreement with Gray in 1995. The 1995 Settlement Agreement provided that, in exchange for Gray's promise not to initiate a lawsuit with respect to EEOC charge 24E-1993-0219, U.S. Steel agreed to pay Gray a certain sum of money. Additionally, the agreement provided, in relevant part:

> USS recognizes its responsibilities under the applicable Basic Labor Agreement, USS' EEO policies and federal, state and local EEO laws and will assure that Charging Party's rights will be preserved in all terms and conditions of employment, including seniority rights.

(Def. Br., Exh. G, ¶ 4).

This 1995 Settlement Agreement was followed by two lawsuits initiated by Gray against U.S. Steel in the United States District Court for the Northern District of Indiana: causes of action 2:99-CV-12 and 2:01-CV-178. In cause number 2:99-CV-12, Gray alleged, among other things, that U.S. Steel denied him opportunities to earn wage incentives and overtime on the 319 bar machine and other machines with high incentive rates due to discrimination based upon his race and his disability and due to retaliation. He also claimed U.S. Steel's actions breached the 1995 Settlement Agreement. In that case, U.S. Steel's Motion for Summary Judgment was granted, Gray appealed

the decision to the Seventh Circuit Court of Appeals, and summary judgment for U.S. Steel was affirmed. *See Gray v. USX Corp.*, 28 Fed. Appx. 570 (7th Cir. 2002). In cause number 2:01-CV-178, Gray, who was pro se, alleged, among other things, that U.S. Steel disregarded his seniority rights by letting junior employees work the 319 bar machine as well as other machines, unfairly disciplined him, refused to process his grievances, and/or otherwise discriminated against him because of his race, his alleged disability/perceived disability, and in retaliation. He also claimed that U.S. Steel's actions violated the 1995 Settlement Agreement. Gray later voluntarily dismissed the case.

2.     *2004 Settlement Agreement*

As the result of another Charge of Discrimination filed with the EEOC by Gray in 2004, U.S. Steel entered into a second EEOC pre-determination negotiated settlement agreement with Gray. The 2004 Settlement Agreement provided that, in exchange for Gray's promise not to initiate a lawsuit with respect to EEOC charge 24E-2004-00136, U.S. Steel agreed to pay Gray a certain amount of money and agreed "[t]hat [Gray] will not be retaliated against in the future and that no other potential employers will be advised of the facts and circumstances of these proceedings." (Def. Br., Ex. L, ¶ 3). The 2004 Settlement Agreement further provides that U.S. Steel agreed to provide written notice to the local EEO Director within 10 days of satisfying each obligation specified in the above paragraph of the Agreement.

**C. Effects on the Machine Shop Resulting from the 2003 Basic Labor Agreement**

Gray worked as a machinist in the Gary Works Machine Shop. In 2003, as a result of extensive negotiations, U.S. Steel and the USW agreed to restructure the entire job classification system for all production and maintenance bargaining unit employees at the various U.S. Steel plants. For the Machine Shop, this meant that Gray and the other employees were now all classified

under one broad category: Maintenance Technician-Mechanical ("MTM"). Furthermore, management now had the ability to assign/reassign the MTMs in the Machine Shop to any of the various assignments within the Machine Shop: i.e. working in the floor assembly areas, performing field work, or working on any of the various machines used in machining parts, as these were all job assignments falling under the MTM (Labor Grade 4) job umbrella.

### D. Machine Shop Grievances and Memoranda of Agreement

Following the adoption of the 2003 BLA, numerous grievances from the Machine Shop were filed. Gray brought several grievances, and the USW brought several additional grievances on behalf of all employees in the Machine Shop:

1. WGa-2003-0650 – Frank Gray claimed U.S. Steel unfairly allowed junior employees to work on the incentive machines and to earn overtime on those machines.

2. WGa-2003-0843 – Brought by USW Local 1014 on behalf of All Affected and claimed U.S. Steel unfairly changed the work schedule in the Machine Shop.

3. WGa-2003-0858 – Frank Gray claimed U.S. Steel unfairly used junior employees (Phillip Worthen and R. Scott Swenton) to fill in on the incentive machines, rather than using employees with the most seniority.

4. WGa-2003-0861 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel failed to use the previously established average incentive rates for employees filling in on the incentive machines.

5. WGa-2003-0862 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel failed to post vacancy notices so that employees could bid on different machines when the current operator retired and a permanent vacancy was created.

6. WGa-2004-0271 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel failed to pay the correct rate for vacation pay.

7. WGa-2004-0333 – Brought by USW Local 1014 on behalf of All Affected claiming that U.S. Steel failed to equalize overtime appropriately and failed to compensate for this.

8. WGa-2004-0620 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel violated the BLA by failing to fill temporary vacancies according to an employee's seniority and job preference.

9. WGa-2005-0348 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel paid the incorrect vacation pay to Benny Morris, Marvin Dillner, Perry Sinks, Pat Lobdell, Frank Gray, Steve Kljajich, and Scott Swenton.

10. WGa-2005-0371 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel failed to properly equalize overtime in the Machine Shop East.

11. WGa-2005-0405 – Frank Gray & Everett Iliff claimed U.S. Steel violated the 2003 BLA when it failed to pay the correct incentive rate on the incentive machines.

12. WGa-2005-0763 – Brought by Local 1014 on behalf of All Affected claiming that U.S. Steel failed to pay the correct incentive rate unique to each machine (machine average performance) when employees filled-in on those machines.

13. WGa-2006-0454 – Frank Gray claimed U.S. Steel violated the BLA when it failed to pay him at the correct rate for vacation days and amended his grievance on August 31, 2006, stating he was not making the proper base rate; failed to get raises due to improper application of the Earnings Protection Clause; was not making the proper incentives; and that he was making only $32.84 an hour but should have been paid the rate earned by the incumbent operator on the 1040 slotter, which was $38.78 an hour.

14. WGa-2006-0555 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel failed to observe the past practice of posting vacancies for specific machines and allowing employees to earn higher incentives.

15. WGa-2007-0106 – Brought by USW Local 1014 on behalf of All Affected claiming that employees, who were assigned to the field crew, were unfairly denied the use of job preferences and seniority for assignments.

16. WGa-2007-0431 – Brought by USW Local 1014 on behalf of All Affected claiming U.S. Steel unfairly put a new MTM in a high incentive area (incentive machines) and failed to put a MTM with more seniority in that position.

For each of the above grievances, U.S. Steel denied that it violated the 2003 BLA. However, in an effort to resolve all of the grievances that originated in the Machine Shop, Tim Mosby, the Gary Works Coordinator of Manpower Utilization and Productivity Improvement, negotiated a settlement with Joe Jarzabkowski, the USW Local 1014 Grievance Committee Chairman.

Mosby knew of the issues raised in the Machine Shop grievances and, through his negotiations with Jarzabkowski, sought to get a better and more consistent incentive plan in place for the company while resolving the pending Machine Shop grievances that may have otherwise consumed large amounts of time and energy if dealt with individually. Mosby did not perform an analysis of how much money each employee was allegedly due for his grievance(s).

Mosby and Jarzabkowski's negotiated settlement was memorialized in a Memorandum of Agreement ("MOA"), dated August 8, 2007, between U.S. Steel-Gary Works and USW Local Union 1014. The parties agreed that the terms of the 2007 MOA were "[i]n full and final settlement of all related grievances and claims (including but not limited to those on Attachment A) . . . ." (Def. Br., Ex. Q; Ex. N). The 2007 MOA provided that U.S. Steel would pay a sum of $125,000 to be paid in two installments. However, the USW Local 1014 would provide the breakdown to U.S. Steel regarding how the funds were to be disbursed among the affected employees. Jarzabkowski suggested that Gray and Lobdell get $30,000 each and that the remaining money be split among the rest of the affected Machine Shop personnel.

However, prior to the suggested distribution, U.S. Steel and the USW Local 1014 agreed to amend the 2007 MOA in order to include additional employees, executing an Addendum to the 2007 MOA on October 8, 2007 ("Addendum"). Given that U.S. Steel would now be paying increased rates to more employees than originally anticipated in the original 2007 MOA, the parties agreed that U.S. Steel would now only pay out $62,000. Gray was told that the 2007 MOA and Addendum settled all of his pending grievances. In August 2007, Jarzabkowski informed Gray that he would be receiving $30,000 from U.S. Steel as a result of the settlement.

However, there was a great deal of discord among the other employees in the Machine Shop regarding the terms contained in the 2007 MOA and Addendum. So much so that the USW Local 1014 eventually filed a new grievance (No. WGa-2008-51) challenging the legality of the 2007 MOA and Addendum. Given the many objections and the new grievance, U.S. Steel refrained from making the $62,000 lump sum payment. Jarzabkowski later informed Gray that payment of the money would be delayed.

After protracted negotiations, U.S. Steel and the USW Local 1014 eventually reached a global agreement and finalized a new MOA in August 2011 in order to settle the grievance (#WGa-2008-51) that challenged the original 2007 MOA and Addendum. The August 2011 MOA was also in full and final settlement of the grievances addressed in the original MOA. As part of the settlement, U.S. Steel agreed to pay the $62,000. In November 2011, U.S. Steel paid $30,000 to Gray. (Def. Br., Ex. A, p. 33).

### E. Gray's 2009 Lawsuit Against U.S. Steel and USW Local 1014

During the pendency of the grievance challenging the 2007 MOA and Addendum, Gray filed an EEOC Charge of Discrimination against U.S. Steel in 2008. Gray complained that he was not allowed to work the 319 machine at the incumbent rate of pay, he was not assigned to work the 319 machine despite having more seniority than the employee assigned to the machine, that he was denied vacation pay, overtime, pay raises, and incentive pay, and that he was retaliated against. Gray filed another EEOC Charge of Discrimination against U.S. Steel in 2009, complaining that U.S. Steel failed to assign him overtime work from September 13, 2006, to September 13, 2008. These charges served as the prerequisites to Gray's third lawsuit against U. S. Steel (2:09-CV-327), which he filed in 2009 in the United States District Court for the Northern District of Indiana.

In 2:09-CV-327, Gray sued both U.S. Steel and the USW Local 1014. Gray claimed that U.S. Steel subjected him to discrimination based upon his race, disability/perceived disability, and retaliation in violation of Title VII, 42 U.S.C. § 1981, and the Americans with Disabilities Act.

With respect to retaliation, Gray claimed that since he lost his first lawsuit against U.S. Steel (2:99-CV-12), U.S. Steel would not act on his complaints about lost earnings opportunities. Gray contended that, since 2000, U.S. Steel had retaliated against him (because he had initiated litigation) by holding off on processing his grievances filed between 2003 and 2007 that were still pending.

Gray also claimed that he was retaliated against due to a complaint he made to the NLRB relating to his grievances not being processed. He asserted that after his complaint, U.S. Steel did not give him the $30,000, did not let him run the 319 bar machine, and did not give him overtime.

Gray also alleged that the USW Local 1014 discriminated against him based upon his race and disability and breached its duty of fair representation. Gray complained that the USW failed to communicate with him about the status of his grievances, settled his grievances as part of a global settlement, and failed to arbitrate his grievances.

Gray was represented by counsel in the 2009 lawsuit. With the consent of the parties, Magistrate Judge Andrew P. Rodovich presided over the case and, on December 17, 2013, granted summary judgment in favor of U.S. Steel and the USW on all of Gray's claims.

### F. The United States Steel and Carnegie Pension Fund

After Gray retired on June 1, 2009, he began collecting a pension pursuant to the United States Steel Corporation Plan for Employee Pension Benefits ("Plan").

The United States Steel and Carnegie Pension Fund ("Carnegie Pension Fund") is a nonprofit Pennsylvania membership corporation. The Carnegie Pension Fund is a distinct entity from Defendant U.S. Steel. The Plan is sponsored and financed by U.S. Steel.

Pursuant to the Plan, Carnegie Pension Fund is the "named fiduciary" of the Plan and is the Plan administrator. *See* (Def. Br., Ex. W, p. 1, § 2, ¶¶ 1-3). The Plan provides that the Carnegie Pension Fund

> shall have full, exclusive and discretionary authority to decide all questions arising out of and relating to the administration of this Plan, including, but not limited to, questions involving the interpretation of the terms and provisions of the Plan and questions of fact. Subject to the provisions of Section 5, the decision of the [Carnegie Pension Fund] shall be final and conclusive as to all questions of interpretation and application of this Plan and as to all other matters arising in the administration of this Plan.

*Id*. § 2, ¶ 3. Coverage under the Plan for employees covered by a collective bargaining agreement is subject to rules outlined in the applicable pension agreement.

On February 14, 2014, Gray sent a letter to the Carnegie Pension Fund requesting that his pension be recalculated in order to take into account the $30,000 settlement payment he received in 2011 after he retired. The Carnegie Pension Fund responded in writing on February 21, 2012, denying the request. The letter explained that, under the terms of the Plan, no additional information was discovered or provided to change his service, which had stopped as of his last day of employment. An "Appeals Procedure 7.1" was appended to the letter. There is no evidence that Gray filed an appeal.

### G. Gray's Deposition Testimony

In his deposition for this lawsuit, Gray testified that U.S. Steel breached the 1995 Settlement Agreement (1) by refusing to adjust his pension amount by taking into account the $30,000

grievance settlement received in 2011, (2) based upon the violations of terms and conditions of his employment he alleged in his grievances, and (3) by delaying the grievance procedure and/or by not timely processing his grievances under the terms of the BLA. He testified that, under the terms of the BLA, grievances are required to be settled in a timely fashion, and he testified that the terms and conditions of the contract are also the terms of his personal EEOC Settlement Agreements.

Gray testified that there were many issues that arose in the workplace with the onset of the 2003 BLA. As a result, he filed grievances. When asked why he did not file a lawsuit in 2003 alleging that U.S. Steel breached the 1995 Settlement Agreement, he responded that U.S. Steel and the USW were still in the administrative process of settling his grievances. He testified that he believed that he had an obligation to allow U.S. Steel and the USW to negotiate and try to settle the disputes.

When asked, Gray was not able to articulate how U.S. Steel violated ERISA other than the refusal to adjust his monthly pension amount as a result of the $30,000 settlement payment and that he felt he "was denied terms and conditions of employment." (Def. Br., Ex. C, p. 16-17, 28). Gray was also not able to articulate how U.S. Steel retaliated against him.

## ANALYSIS

Defendant U.S. Steel seeks summary judgment on all of Gray's claims, arguing that the claims in Counts 2, 3, and 4 are time barred under the Labor Management Relations Act and are barred by claim preclusion and that U.S. Steel is not the proper party for the ERISA claim in Count I. Gray responds that his claims are distinct breach of contract claims alleging breaches of the 1995 and 2004 Settlement Agreements and that he is entitled to enforce the agreements based on U.S.

Steel's violations of the terms of the agreements directly "related to terms and conditions of our 2003 Labor Contract." (Pl. Resp. 1).

## A. Counts 2, 3, and 4

In Counts 2, 3, and 4, Gray alleges that U.S. Steel breached the 1995 and 2004 Settlement Agreements. The 1995 Settlement Agreement provides, in relevant part:

> 4. USS recognizes its responsibilities under the applicable Basic Labor Agreement, USS' EEO policies and federal, state and local EEO laws and will assure that Charging Party's rights *will be preserved in all terms and conditions of employment, including seniority rights.*

(Def. Br., Ex. G) (emphasis added). The 2004 Settlement Agreement provides, in relevant part:

> 3. (b) That the Charging Party *will not be retaliated against in the future* and that no other potential employers will be advised of the facts and circumstances of these proceedings.

(Def. Br., Ex. L) (emphasis added). Gray describes these provisions as being intended "to encourage Managers to afford Plaintiff, as a minority, equal treatment and equal opportunities." (Pl. Resp. Br. 2). Yet, Gray, who is black, argues that as he gained seniority status, the managers became more determined to circumvent his seniority for the sake of younger white employees.

By bringing the instant lawsuit based on alleged breaches of the two Settlement Agreements, Gray attempts to turn attention away from the true nature of his claims, focusing instead on the fact that his grievances were not final until U.S. Steel paid him the $30,000 settlement in November 2011, that he brought new EEOC charges for violations of the Settlement Agreements only after the $30,000 settlement payment was made, and that he timely filed his Complaint in this case once he received his notice of right to sue from the EEOC. By contending that he could not have brought this lawsuit for breach of the Settlement Agreements until the grievances were finally resolved in 2011, Gray attempts to evade the restrictions of the statute of limitations for filing claims under the Labor

Management Relations Act for violations of the BLA as well as the preclusive effect of the final

ruling in Cause Number 2:09-CV-327 that shares a common factual basis with this action. In the

end, Gray has not identified a genuine issue of material fact as to any claims arising out of the 1995

and 2004 Settlement Agreements that are not either barred by the statute of limitations because they

are truly claims for violations of the BLA or barred by claim preclusion.

1.    *Labor Management Relations Act*

U.S. Steel argues that Gray's allegations that U.S. Steel breached the terms and conditions

of the 1995 and 2004 Settlement Agreements are a surreptitious attempt to disguise his claims that

are more properly characterized as breaches of the collective bargaining agreement–the BLA.

Indeed, in order to determine whether there was a breach of the 1995 Settlement Agreement by a

denial of the terms and conditions of employment or a breach of the 2004 Settlement Agreement by

retaliation by ignoring seniority and overtime equalization rights, one must first look to the BLA to

determine if there was in fact a violation of the terms and conditions of employment therein.

An action for damages caused by an alleged breach of an employer's obligation embodied

in a collective bargaining agreement falls under section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983);

*Bryant v. Honeywell Int'l*, 3:11cv495, 2014 WL 1316949, at *9 (N.D. Ind. Mar. 28, 2014). The

LMRA governs "disputes involving the interpretation or enforcement of [collective bargaining

agreements] or are substantially dependent on analysis of a [collective bargaining agreement]." *Fish

v. Reliance Elec. Co.*, 25 F.3d 1053, 1994 WL 196425, at *1 (7th Cir. May 18, 1994) (citing

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)). Claims under section 301 of the LMRA are

subject to a six-month statute of limitations. *Chapple v. Nat'l Starch & Chem. Co. and Oil*, 178 F.3d

501, 505 (7th Cir. 1999) (citing *DelCostello*, 462 U.S. 151). "Any such claims must be filed within six months of a final decision on a claimant's grievance, or from the time the claimant discovers, or in the exercise of reasonable diligence should have discovered that no further action would be taken on his grievance." *Bryant*, 2014 WL 1316949, at \*9; *see also Richards v. Local, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986) (citing *DelCostello*, 462 U.S. at 155).

Despite Gray's protests that he has brought no claims under the BLA or the LMRA and that he is alleging a separate cause of action for breach of the Settlement Agreements, any alleged breach of the BLA in this case constitutes a claim under Section 301 of the LMRA. In his Complaint and throughout his response brief, Gray asserts that U.S. Steel breached the Settlement Agreements by failing to account for Gray's seniority in certain situations, by not giving him overtime, and by improperly handling his grievances. All of these issues can be resolved only by interpreting the BLA.

For example, in Count 2, Gray claims that (1) U.S. Steel did not execute the grievance procedure in a timely fashion, (2) refused a full hearing on his grievances, and (3) did not provide him with an explanation when he was sent the $30,000 grievance settlement payment. Any ruling on these issues would necessarily involve an interpretation of the BLA, which contains a detailed section regarding the processing of grievances. In addition, the BLA provides that the USW is the exclusive representative of bargaining unit employees and, therefore, governs whether U.S. Steel should explain Gray's settlement payment to him.

In Count 3, Gray alleges that U.S. Steel "repeatedly ignored his seniority and overtime equalization rights, in violation of the 2003 and 2008 BLA and refused to grant a full and fair hearing to Plaintiff and refus[ed] to allow him to participate in any of the grievances' 2nd and 3rd

step procedures." These claims, too, require an interpretation of the BLA, which, as repeatedly noted by Gray, explicitly addresses seniority, overtime, and grievances/hearings.

In Count 4, Gray alleges that U.S. Steel has implied that it may have violated the 2003 BLA when it issued him the $30,000 grievance settlement check. Again, reference to the BLA is required because it details how grievance settlements affect U.S. Steel's position on the grievance: "The settlement or withdrawal of a grievance prior to Step 3 shall be without precedent or prejudice to either Party's position." (Def. Br., Ex. D, p. 91).

In his response brief to the instant Motion for Summary Judgment, despite his protestations that he is not bringing claims under the LMRA, Gray makes arguments that continue to support a reading of his claims as requiring interpretation of the BLA under the LMRA:

> Plaintiff will show there are grounds to sue Defendant for violations of the 2003 Basic Labor Agreement and the 2009 Pension Agreement, which in effect violates, two EEOC Conciliation Agreements, or promises to Plaintiff, which assured that Defendant, would grant to Plaintiff all terms and conditions of employment. (Pl. Resp. 1).

> By the fact that Defendant settled by collective bargaining with Plaintiff's Union (a partial payment) of long-pending grievances involving Plaintiff (over 8-years-long-pending), and by the fact Defendant Managers admitted (in sworn testimony) that Plaintiff was denied certain terms while employed, such as: seniority, overtime, fair pay, and equal treatment while employed at Defendant's Machine Shop-Gary Works. Defendant is subject to the applicable laws that permit Plaintiff to sue for damages. (Pl. Resp. 2).

> Plaintiff initiated this present Complaint after Defendant and Union made a "final" decision in closing out Plaintiff's grievances. However, Plaintiff requested by his grievances, that he wanted to be "made whole" and to be paid "all lost earnings." It is for that "failure" for Defendant and Union to not make Plaintiff "whole," Plaintiff now seeks to be made whole through this suit for the Defendant violating "binding" Conciliations Agreements sponsored through the EEOC. (Pl. Resp. 2-3).

> Plaintiff should be . . . able to *enforce* a conciliation agreement, and *the CBA*. (Pl. Resp. Br. 9) (emphasis added).

Defendant violated *terms and conditions* of Plaintiff's employment that are related to the 2003 BLA and U.S. Steel Policy #5106 and relating to past practices with similarly situated employees. (Pl. Resp. Br. 3-4) (emphasis added).

This Court must also consider Defendant's past practices in the treatment of similarly situated employees as well as the *reading of the 2003 BLA*. (Pl. Resp. Br. 16) (emphasis added).

[In Gray's prior lawsuit, Judge Rodovich] did not weigh "all" evidence as to whether the Defendant violated Plaintiff's right to *terms of the CBA*, and [Judge Rodovich] did not weigh the evidence as to the terms that were 'promised' to Plaintiff by 'private' Settlement Agreement(s). (Pl. Resp. Br. 17) (emphasis added).

The Court should also *look at the 2003 BLA terms and conditions* (not necessarily the Federal Statutes not to retaliate) that states the Employer will not retaliate against any employee for exercising his rights under Federal Statutes. (Pl. Resp. Br. 25) (emphasis added).

By Plaintiff, in this present case, submitting grievances through the collective bargain[sic] process and possibly to arbitration, *Plaintiff sought to vindicate his contractual right under a CBA*. (Pl. Resp. Br. 22) (emphasis added).

In his response brief, Gray lists many of the losses he claims to have suffered that formed the bases of his grievances dating back to 2003, for which the $30,000 grievance settlement was paid. These alleged losses include (a) the denial of overtime equalization opportunities totaling approximately 1056 hours, (b) the denial of seniority rights to operate a machine at the "established pay rate" for that machine, which was being operated by a junior employee for less than the "established pay rate" for the machine, (c) lost average earnings for pension calculation purposes over Gray's last five-year period, (d) lost vacation pay from 2004 through 2007, and (e) lost earnings due to U.S. Steel denying Gray the "established pay rate" for the machine Gray was allowed to operate.

Thus, to prove a breach of the Settlement Agreements, to the extent that the facts Gray identifies would even constitute a breach of those agreements, Gray would first have to show

violations of the BLA, which is governed by the LMRA. However, Gray's filing of his Complaint in this case on April 24, 2013, was not within six months of receiving the $30,000 settlement payment in late 2011, which is when Gray "discovered or should have discovered that no further action would be taken on his grievance." Thus, the claims are untimely. Gray has failed to articulate any credible reason why the statute of limitations should be tolled. Gray cannot evade the statute of limitations under the BLA by bringing breach of contract claims.

Moreover, even if the statute of limitations had not expired on the LMRA claims arising from the grievances for which Gray received the $30,000 settlement in 2011, Gray cannot make the requisite preliminary showing that the USW breached its duty of fair representation. *See DelCostello*, 462 U.S. at 164; *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) ("When union members sue their employer for breach of contract . . . they must also state a prerequisite claim of breach of their union's duty of fair representation . . . . The breach-of-fair-representation requirement applies whether or not the plaintiffs name the union as a defendant in their LMRA suit."). In the 2009 lawsuit, Gray sued the USW for breach of its duty of fair representation in handling the same grievances that are the subject of the instant lawsuit. Gray alleged that the USW did not properly handle the grievances and that the USW failed to communicate with him regarding the status of the grievances. In his December 17, 2013 Opinion and Order in 2:09-CV-143, Judge Rodovich held that Gray had failed to raise a genuine issue of material fact that the Union breached its duty. *Gray v. United States Steel Corp.*, No. 2:09-CV-327, 2013 WL 6682951, at *17 (N.D. Ind. Dec. 17, 2013).

Therefore, Gray's claims in Counts 2, 3, and 4 based on an interpretation of the BLA are time barred.

2.      *Res Judicata/Claim Preclusion*

In addition, the issues in Counts 2, 3, and 4 of the Complaint in this case were already litigated by Gray in the 2009 lawsuit before Judge Rodovich. Although the 2009 lawsuit was brought under Title VII, § 1981, and the ADA and not under the BLA or as a breach of the Settlement Agreements as in this case, both causes of action arise out of the same set of operative facts for which there was a final resolution in favor of U.S. Steel and the USW. Gray could have alleged that U.S. Steel was in violation of the 1995 and 2004 Settlement Agreements in the 2009 lawsuit.

"The doctrine of [res judicata or] claim preclusion is premised on the idea that, when a claim has been fully litigated and come to judgment on the merits, finality trumps." *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011) (citing *In re Ingersoll, Inc.*, 562 F.3d 856, 861 (7th Cir. 2009)). There are three elements of claim preclusion under federal law: (1) a final decision in the first suit; (2) a dispute arising from the same transaction (identified by its "operative facts"); and (3) the same litigants (directly or through privity of interest). *Id.* (citing cases). All three elements are met in this case.

First, it is undisputed that Judge Rodovich's December 17, 2013 Opinion and Order was a final decision in Gray's 2009 lawsuit.

Second, it is undisputed that Gray and U.S. Steel were parties in the prior lawsuit.

Third, with the exception of the facts underlying Gray's ERISA claim, addressed in the next section, the dispute in this case arises out of the same transaction, or the same operative facts, as those forming the basis of the 2009 lawsuit, namely that changes in the 2003 BLA engendered numerous grievances regarding seniority, job assignments, incentive rates, and incumbency, all of

which concluded initially in the 2007 MOA and its Addendum and finally in the 2011 MOA with the $30,000 grievance settlement to Gray. In the 2009 lawsuit against U.S. Steel, Gray made the following factual arguments that are common to the allegations in this lawsuit.

In the 2009 case, Gray argued that U.S. Steel had been "denying Plaintiff his seniority rights since 2003 . . . with respect to the 319 bar machine" and that there was a "material issue of fact in dispute as to whether USS was required to take seniority into consideration" with respect to the other machines in the Machine Shop. ( 2:09-CV-327, Pl. Resp. 12, 13). Gray argued that U.S. Steel did not allow him to work overtime on weekends. *Id*. at 6. Gray asserted that U.S. Steel ignored his complaints about unfair overtime opportunities. *Id.* at 17. Gray filed a grievance in 2008 complaining that he was not receiving overtime prior to September 2008. (2:09-CV-327, Pl. Resp. Stmt. of Facts 3). Gray argued that U.S. Steel and the USW did not negotiate a final agreement in a timely fashion. *Id*. at 14. Gray alleged that U.S. Steel discriminated against him under the Americans with Disabilities Act with regard to the denial of overtime. (2:09-CV-327, Am Compl. 10). Gray also alleged retaliation in violation of Title VII based on his prior EEOC charges. (2:09-CV-327, Am Compl. 10). In the Opinion and Order, Judge Rodovich addressed Gray's claims that the USW withheld information from him concerning his grievances and excluded him from union meetings. Judge Rodovich also addressed Gray's claim that another employee was treated differently by being permitted to withdraw his grievance from the negotiations that ultimately resulted in the $30,000 settlement payment to Gray in 2011. *Gray*, 2013 WL 6682951, at *16.

"Two claims are one for the purposes of *res judicata* if they are based on the same, or nearly the same factual allegations." *Czarniecki*, 633 F.3d at 550 (citing *Brzoskowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995)). Once a transaction has caused injury, all claims arising

from that transaction must be brought in one suit or be lost. *Id*. at 550. In this case, Gray has not articulated any factual basis for the claims in Counts 2, 3, and 4 that are different from the operative facts of the 2009 case. The list of alleged losses raised in his numerous grievances, set forth in the previous section, are co-extensive with the factual allegations of the 2009 lawsuit. During his deposition in this case, Gray was repeatedly asked to provide a factual narrative of the events that constitute his claims for breach of the 1995 and 2004 Settlement Agreements. Gray's only comprehensible response was that he had previously filed grievances alleging violations of the terms and conditions of employment under the BLA. The grievances that form the basis of this lawsuit for breach of contract are the same grievances that were under consideration in the 2009 case. Those grievances were the subject of the 2007 MOA and its Addendum, and they were also part of the 2011 MOA that ultimately resulted in the issuance of the $30,000 grievance settlement payment to Gray.[2]

Gray cites *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 714-15 (7th Cir. 1969), for his argument that he had a right to allow the collective bargaining process come to a close with the payment in 2011. In *Bowe*, the Seventh Circuit Court of Appeals held that "it was error not to allow the plaintiffs to utilize dual or parallel prosecution both in court and through arbitration so long as election of remedy was made after adjudication so as to preclude duplicate relief which would result in an unjust enrichment or windfall to the plaintiff." *Id*. This was so even though the defendant faced

---

[2] Another district court in the Seventh Circuit Court of Appeals faced with similar facts held that a clause in the EEOC negotiated settlement agreement that the employer "acknowledges its legal obligation not to unlawfully retaliate against [plaintiff] because she filed the Complaint" could not support a breach of contract claim because the clause was an affirmation of the employer's duty not to unlawfully retaliate under the ADEA. *See Tate v. Orthopaedics-Indianapolis, P.C.*, No. 1:12-CV-1188, 2014 WL 1091335, at *9 (S.D. Ind. Mar. 19, 2014). As in *Tate*, a finding that U.S. Steel retaliated against Gray would also mean that U.S. Steel breached the Settlement Agreement. Thus, Gray's claim that U.S. Steel breached the agreement by retaliating against him is encompassed by his Title VII retaliation claim in his 2009 suit, which has already been resolved in favor of U.S. Steel.

actions in multiple forums. *Id.* Similarly, Gray cites *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47-49 (1974), which rejected the election of remedies position taken by the district court and held that the plaintiff had not waived the right to bring a Title VII claim by the exercise of collective bargaining rights. In the instant case, however, Gray has not been precluded from pursuing both a Title VII action and his grievances through the Union. Rather, any claims arising out of the grievance process should have been brought within six months of the final decision and Gray should have brought his breach of contract claim based on retaliation during the pendency of the 2009 Title VII action as the grievance procedure was complete before the termination of the 2009 lawsuit and the 2011 payment was included in the facts before Judge Rodovich.

In his response brief, Gray argues that U.S. Steel waived the affirmative defense of claim preclusion by not affirmatively pleading it in its Answer as required by Federal Rule of Civil Procedure 8. However, "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (citing *Williams v. Lampe*, 399 F.3d 867, 870-71 (7th Cir. 2005) (per curiam); *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003)). Here, Gray is not prejudiced because he addressed the defense of claim preclusion on the merits in his response to the instant motion. And, responding to the defense would not require any additional discovery as knowledge of the factual basis of the 2009 lawsuit and the instant lawsuit is within Gray's control. Moreover, a court may raise the issue of preclusion on its own in the interest of judicial economy even when a party fails to do so. *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996). The Court finds that the EEOC did not forfeit the defense.

Gray also attempts to distinguish the two lawsuits by their different legal claims: Title VII in the 2009 case versus breach of contract here. He notes that the causes of action have different

statutes of limitation and different remedies. But, the doctrine of claim preclusion prevents a party from raising a claim or defense that could have been raised in the first proceeding. *Sanders v. Ill. Dep't of Healthcare and Family Servs.*, 2014 WL 6439686, at * 1, — F. App'x —, — (7th Cir. Nov. 18, 2014) (citing *Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 575 (7th Cir. 2013); *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 637-39, 644 (7th Cir. 2004)). With the exception of his ERISA claim, Gray has offered no reason why he could not have alleged a breach of the 1995 and 2004 Settlement Agreements in the 2009 lawsuit. Importantly, Judge Rodovich cited as a material fact in his Opinion and Order that Gray had received the $30,000 grievance settlement in 2011. Thus, all issues in Counts 2, 3, and 4 of the Complaint in this case were before Judge Rodovich for consideration as well.

Gray argues for the application of "equitable tolling," making references to § 1981 and a four-year statute of limitations from the date he received the check for the $30,000 grievance settlement. However, Gray has not argued how any § 1981 claim, a legal claim he did not identify in this lawsuit until his response brief, is different from the Title VII and § 1981 claims he brought in the 2009 lawsuit, given that both arise out of U.S. Steel's handling of Gray's grievances. Judge Rodovich granted summary judgment in favor of U.S. Steel on Gray's § 1981 claims in the 2009 case. Although Gray asserts that the § 1981 claim arises from the final grievance settlement in 2011, that settlement was part of the facts set out in Judge Rodovich's Opinion and Order underlying the 2009 lawsuit. Gray has not explained why he could not have brought any different § 1981 claim in the prior proceeding.

Gray had ample time and opportunity to bring his breach of contract claims in the prior lawsuit and failed to do so. Thus, the Court grants summary judgment in favor of U.S. Steel on

Gray's claims for breach of the 1995 and 2004 Settlement Agreements in Counts 2, 3, and 4 of the Complaint. As a result, the Court does not address those portions of Gray's response brief dedicated to rearguing the merits of his grievances or asserting that Judge Rodovich's summary ruling in 2:09-CV-327 was based on incorrect facts. *See* (Pl. Resp. Br. ¶¶ 6-15).

## B. ERISA Claim for Adjustment of Monthly Pension Earnings

In Count 1, Gray alleges that U.S. Steel breached the 1995 and 2004 Settlement Agreements by refusing to adjust Gray's monthly pension earnings with back pay to account for the $30,000 grievance settlement in violation of the Pension Agreement between U.S. Steel and USW and in violation of ERISA. U.S. Steel seeks summary judgment on the basis that the Carnegie Pension Fund and not Defendant U.S. Steel is the administrator of the pension plan, and, thus, U.S. Steel is not the proper defendant for this ERISA claim of improper calculation of pension earnings.

ERISA's civil-enforcement section provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (also known as ERISA § 502(a)(1)(B)). The proper defendant in a suit for benefits due under an ERISA plan is the Plan and not the employer. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911, 913 (7th Cir. 2013) (citing *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir. 2011); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 879 (7th Cir. 2008); *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004)).

ERISA also provides a claim for breach of fiduciary duty. 29 U.S.C. § 1132(a)(3). The "threshold question" for such a claim is "whether [the defendant] was acting as a fiduciary (that is,

was performing a fiduciary function) when taking the action subject to complaint." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013) (internal quotation marks omitted) (quoting *Pegram v. Herdich*, 530 U.S. 211, 226 (2000)). The fiduciary duty under ERISA includes a requirement that the fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" for the exclusive purpose of "providing benefits to participants and their beneficiaries," among other duties. 29 U.S.C. § 1104. A fiduciary is defined under § 3(21)(A) of ERISA:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting *management* of such plan or exercises any authority or control respecting *management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the *administration of such plan*. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphasis added). Thus, ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties." *Larson*, 723 F.3d at 916 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)) (internal quotation marks and citation omitted).

"[A] benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 219 (2004). "Therefore, 'the ultimate decisionmaker in a plan regarding an award of benefits' is a fiduciary and acts as a fiduciary 'when determining a participant's or beneficiary's claim.'" *Larson*, 723 F.3d at 916 (quoting *Davila*, 542 U.S. at 220). An employer can be the fiduciary of its employee-benefits plan *if* it meets this definition. *See Brooks*, 729 F.3d at 766 ("*When* an employer also serves as the

administrator of its employee-benefits plan, it wears two hats, and not all of the employer's business decisions involve acts of an ERISA fiduciary.") (emphasis added) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996); *Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139 (7th Cir. 1991)).

The action at issue in Gray's Complaint is the computation of his pension benefits with respect to the $30,000 settlement he received in 2011 (after he had already retired in 2009). The fiduciary is Carnegie Pension Fund, a non-profit membership corporation, and not Defendant U.S. Steel, a separate entity. The Plan explicitly provides that Carnegie Pension Fund has full and exclusive authority to decide all questions involving the interpretation of the terms and provision of the Plan and questions of fact. And, Carnegie Pension Fund handled Gray's correspondence seeking an adjustment of his pension benefits. It is undisputed that Gray sent a letter to Carnegie Pension Fund in February 2012 requesting that his pension be recalculated to account for the $30,000 settlement. It is also undisputed that Carnegie Pension Fund sent correspondence to Gray shortly thereafter advising him that, under the terms of the Plan, there was no basis to adjust his monthly pension benefits. There is no evidence that U.S. Steel was involved in the calculation of Gray's pension, the decision, or the correspondence.

Gray asserts that U.S. Steel "retains responsibility for the administration of pension benefits," (Pl. Resp. Br. 6); U.S. Steel "exercised 'discretion' when it 'designated' [Carnegie Pension Fund] as administrators," *id.*; and that U.S. Steel "exercises discretionary authority or control respecting administration of the benefits of the 2009 Pension Agreement," *id.* at 22. Yet, Gray has designated no evidence to show that U.S. Steel took any acts that would qualify it as a fiduciary under ERISA in relation to Gray's claim. Gray also contends that U.S. Steel "declared

itself to be responsible for the administration of benefits." (Pl. Resp. Br. 6). However, the portion of the Pension Agreement, § 10.1, cited by Gray in fact provides:

> The Company, through its designated management representatives, shall be responsible for the administration of the benefits set forth in This Pension Agreement.
>
> The Company has chosen to delegate the administration of the benefits set forth in This Pension Agreement to the [Carnegie Pension Fund]. References to the Company in the text of This Pension Agreement shall be deemed to refer to the [Carnegie Pension Fund] where appropriate.

(Pl. Br., Ex. 3, § 10.1)

Gray argues that U.S. Steel should have contacted the Carnegie Pension Fund to credit the $30,000 grievance settlement as a "creditable earning." Yet, Gray does not identify any authority for this position. Rather, Gray cites generally the provision titled "Creditable Earnings For Pension Purposes," which dictates how the *Plan administrator* is to treat creditable earnings and which defines what constitutes a creditable earning. (Pl. Resp, Exh. 4, p. 30 (GRAY020383)). Gray does not cite or quote any specific portion of this section in support of his claim against U.S. Steel. In conjunction with this argument, Gray contends, without explanation, that U.S. Steel violated Section 8 of the Plan titled "Recovery of Overpayments and Correction of Underpayments" (Pl. Resp, Ex. 4, p. 11 (GRAY020392)). Again, this section governs the responsibility of the administrator and does not impose any obligations on U.S. Steel.

Finally, Gray argues that because U.S. Steel retained the right to amend or terminate the Plan at any time in its sole discretion it retains "some degree of 'discretion according to ERISA Section 3(21)(A)." (Pl. Br. 23). The plain meaning of these words belies Gray's argument. The power to amend or terminate the Plan does not equate with discretionary control over a plan's management, administration, or assets.

Because U.S. Steel is not the proper defendant for Gray's claim that the refusal to recalculate his monthly pension earnings to account for the $30,000 grievance settlement was improper, the Court grants summary judgment in favor of U.S. Steel on Gray's ERISA claim in Count I.[3]

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** United States Steel Corporation's Motion for Summary Judgment [DE 36]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant United States Steel Corporation and against Plaintiff Frank L. Gray.

So ORDERED this 9th day of December, 2014.


s/    Paul Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       *Pro se* Plaintiff

---

[3] Because Defendant U.S. Steel is not the proper defendant, the Court need not address Gray's claim that he was not given proper notification of the appeals process or U.S. Steel's related argument in the Motion for Summary Judgment that Gray failed to follow the appeals procedure in the Pension Agreement negotiated by U.S. Steel and the USW, which has been adopted by the Pension Benefits Plan. *See* (Def. Br. 11).